STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
ALBERT PURDY, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
SAM MELAMED, DEFENDANT-RESPONDENT.

Argued January 23, 1968—Decided March 18, 1968.

Mr. *Ernest S. Glickman* argued the cause for defendant-appellant Albert Purdy (*Mr. Michael A. Querques,* attorney).

Mr. *Harvey L. Stern* argued the cause for defendant-respondent Sam Melamed.

*Mr. Edward J. Phelan,* Assistant County Prosecutor, argued the cause for plaintiff State of New Jersey (*Mr. Vincent Panaro,* Mercer County Prosecutor, attorney).

*Mr. Joseph A. Hoffman,* Assistant Attorney General, argued the cause for Arthur J. Sills, Attorney General of New Jersey, *amicus curiae* (*Mr. Joseph A. Hoffman* and *Mr. John A. Kingfield,* Deputy Attorney General, on the brief).

*Mr. Alvin E. Granite,* Prosecutor of Gloucester County, appeared for the New Jersey County Prosecutors Association, *amicus curiae.*

The opinion of the court was delivered by

PROCTOR, J. We granted certification in these two cases to resolve a conflict between parts of the Appellate Division in construing *N. J. S.* 2A:121–3(b):

"Any person who:

\*     \*     \*     \*     \*     \*     \*

b. Knowingly possesses any paper, document, slip or memorandum that pertains in any way to the business of lottery or lottery policy, so-called, whether the drawing has taken place or not;

\*     \*     \*     \*     \*     \*     \*

Is guilty of a misdemeanor."

In each case the defendant was convicted, after a jury trial, of violating the above statute. The issue raised by each defendant is that the jury should have been instructed that the statute does not apply to a mere bettor as distinguished from one engaged in the operation of a lottery business, and that possession by a bettor of notations made by him of his bets does not violate the statute.

Each defendant operates a store in the City of Trenton: Purdy a confectionary store and Melamed a grocery. Both stores were raided by the police under search warrants to which no challenge is made. In *Purdy* the police seized three

papers which were identified at the trial by a police expert as numbers plays. Purdy testified that the slips were notations of lottery bets which he himself planned to play but had not yet placed. In *Melamed* a number of papers were seized at the defendant's store and introduced at the trial. These papers were identified by the police expert as records of numbers bets. According to Melamed, these notations represented memoranda of bets he himself placed. Both defendants denied ever taking bets, testifying that they were mere players.[1]

The Appellate Division, in an unreported opinion, affirmed the conviction in *Purdy* and held that the trial judge correctly charged the jury that although the papers "must pertain in some way to the lottery business, it must have a utilitarian purpose in a lottery business, not necessarily the lottery business of the defendant." In *Melamed* another part of the Appellate Division reversed the conviction, holding that the trial court erred in refusing defendant's request "that if the papers in question were merely notations made by defendant of bets he had made, they would not constitute memoranda pertaining to the business of a lottery, and thus could not be made the basis of a verdict of guilty." 93 *N. J. Super.* 573 (*App. Div.* 1967). We granted Purdy's petition for certification, 49 *N. J.* 361 (1967), and the State's petition in *Melamed,* 50 *N. J.* 92 (1967).

Both defendants devote a substantial part of their briefs to the contention that *N. J. S.* 2A:121–3(b) does not apply to a mere bettor or player but was intended to reach only those engaged in the lottery business. Both defendants stress

---

[1] We note that in each case the police gambling expert identified the papers as being a lottery operator's notations rather than those of a bettor. The expert testified that his opinions were based in part upon the presence of initials alongside each numbers play indicating the identity of the bettor. Melamed explained the initials on the slips found in his store as being those of the numbers runners who took his bets. However, both Melamed and Purdy testified they did not know the names of the persons with whom they placed their bets.

the statutory phrase, "pertains in any way to the *business* of lottery" (emphasis added) ; they argue that "it is reasonable to assume that this phraseology was intended to cover possession only by those who were themselves engaged in the lottery business." The defendants contend that it would be anomalous to convict a bettor under *N. J. S.* 2A:121–3(b) for possessing a record of his bet since there is nothing in the lottery statute making the placing of the bet unlawful.

That the lottery statute does not include the act of placing a bet as an offense does not mean that the Legislature extended a license to bettors to possess the prohibited materials. The statute is written in the broadest of terms, *cf. Lucky Calendar Co. v. Cohen,* 19 *N. J.* 399, 411 (1955) ; it refers to "any person," making no distinction between an operator and a bettor in connection with possession of papers pertaining to the lottery business. If papers do pertain to the business of lottery, the mere fact that one who knowingly possesses them is a bettor will not absolve him. See *State v. Collins,* 63 *N. J. L.* 316, 320 (*E. & A.* 1899) ; *State v. Arthur,* 70 *N. J. L.* 425, 428 (*Sup. Ct.* 1904). The focus is on the character of the "paper, document, slip or memorandum" and not upon the role of the possessor. This principle is demonstrated in *State v. Rucker,* 46 *N. J. Super.* 162 (*App. Div.*), certification denied, 25 *N. J.* 102 (1957). There the trial court found that the defendant knowingly possessed instruction cards which indisputably pertained to the lottery business. In affirming the conviction the Appellate Division, in an opinion by Justice (then Judge) Hall, held that these facts constituted a violation of the statute under consideration here (*N. J. S.* 2A:121–3(b)) without regard to whether the defendant was a bettor or was connected with a lottery business. *Id.* at *p.* 171. Of course, like the instruction cards in *Rucker,* the traditional lottery slips prepared by the operator as receipts for bets also fall within the ban of the statute. *Ibid.* Since the focus is on the character of the papers, knowing possession of such slips violates the statute even though there is no proof that the possessor

is involved in the gambling business. See, *e.g., State v. Collins, supra; State v. Brown,* 67 *N. J. Super.* 450, 454–55 (*App. Div.* 1961); *State v. Gawronski,* 9 *N. J. Super.* 51 (*App. Div.* 1950). By its enactment of the amendment to *N. J. S.* 2A:121–3(b) (L. 1967, c. 88, § 1, effective June 1, 1967), the Legislature has acknowledged that possession of a lottery slip by a bettor is unlawful. This amendment excepts from the operation of the statute the possession by a bettor of papers relating to a lottery authorized, sponsored and operated by a sister state and purchased in that state by the holder thereof. Thus there can be no doubt that the statute encompasses a bettor (as well as one who engages in the lottery business) who knowingly possesses papers which the statute describes as contraband.

The more difficult question is whether the statute also makes unlawful the possession of a paper written by the bettor to record a bet he himself has played or is planning to play. As noted above, Purdy testified that the papers found in his store were his own recordations of numbers bets he planned to make; the Appellate Division held that possession of such papers was forbidden by the statute. Melamed testified that the papers found in his store were his notations of numbers bets he already had played. Another part of the Appellate Division held that the statute was not intended to reach possession by a bettor of his notations of his own bets; the court said, "His [defendant's] personal memorandum of his bet does not pertain to the lottery business any more than a grocery customer's private notation of her order is a memorandum pertaining to the grocery business," 93 *N. J. Super., supra* at *p.* 577.

We think that in reaching the above conclusion the Appellate Division in *Melamed* did not give sufficient import to the broad terminology used in *N. J. S.* 2A:121–3(b). The statute applies to "*any* person who * * * knowingly possesses *any* paper, document, slip or memorandum that pertains *in any way* to the business of lottery * * *." (Emphasis added.) Of course, as the Appellate Division in *Melamed* concluded,

in the narrowest sense of the word "pertain" such papers might not pertain to the business of lottery. However, this word must be read with the appositional phrase "in any way." In this context it is clear that the relationship between the paper, document, slip or memorandum and the lottery business need only be a connection of the most general nature. There is nothing in the language of the statute which compels the conclusion that a bettor's own memorandum is beyond the reach of the statute though one prepared by a lottery operator containing the same information and relating to an identical transaction is within the statutory ban. *Cf. State v. Bogen*, 23 *N. J. Super.* 531, 533-35 (*App. Div.* 1952), affirmed 13 *N. J.* 137 (1953). A requirement that the State prove that a particular paper was prepared by a lottery operator is tantamount to requiring proof of the existence of the lottery. But the necessity of such proof is dispensed with by *N. J. S.* 2A:121-5:

> "It shall not be necessary, upon the trial of an indictment or accusation for violation of any of the provisions of this chapter, to prove (a) the existence of a lottery in which any ticket * * * is purported to have been issued, or * * * (c) that any ticket * * * was signed or issued by authority of any manager or person assuming to have authority as manager, or (d) the existence of a lottery in which any number or numbers may be charged to have been issued. * * *"

The Legislature has sought to facilitate the suppression of illegal lotteries by outlawing a broad range of activities including the operation of a lottery, the insuring of a lottery business, the advertising of a lottery, the leasing of premises to a known lottery operation, and the knowing transmission of lottery information (*N. J. S.* 2A:121-1 to 4). To restrict the sweep of the possession statute (*N. J. S.* 2A:121-3(b)) would weaken considerably the muscle given by the Legislature to enforcement of the lottery laws. To carve an exception to the statute for notations made by a bettor himself, whether of bets made or yet to be made, would leave but little substance to the law, since it can be

anticipated that many of those accused of violating the statute would contend, as did the defendants in the present cases, that the papers were but their own notations of their personal bets. This Court's comments in *State v. Reed,* 34 *N. J.* 554 (1961) apply here. In that case the defendant, convicted of possessing narcotics in violation of *N. J. S.* 2A:18-4, argued that the statute did not apply to possession solely for the possessor's imminent use. In rejecting this contention we said:

> "Illegal transfers do not take place under the eyes of the police. They are clandestine operations carefully guarded from official scrutiny. The proscription of possession, without more, facilitates the enforcement of the law against traffickers by eliminating the burden of proving a transfer. If possession is interpreted not to include possession for imminent personal use, the purpose of facilitating enforcement against traffickers would be seriously hindered.
>
> \*     \*     \*     \*     \*     \*     \*
>
> "[A]n informed seller would be foolish not to carry small amounts [of narcotics] so that if apprehended, he could persuasively assert that the drug was intended for his own imminent consumption." *Id.,* at *pp.* 565–567.

Similarly, a lottery operator and his agents often might evade prosecution by claiming the papers they possessed were their personal memoranda of bets they had made or were planning to make on a lottery. If the courts were to ignore the plain meaning of the statutory language and to countenance such a contention, the effectiveness of the gambling laws would be seriously impaired. So long as one engaged in the lottery business were able to keep his records in a way compatible with a contention that they represented his own bets, it would be most difficult for the State to show that the notations represented bets taken rather than bets made or to be made, in the absence of a direct observation of the actual taking of a bet — a transaction generally shielded from the eyes of the police. An example of the difficulties which might be encountered is *People v. Tinker,* 228 *N. Y. S. 2d* 545 (*City Ct. of Long Beach* 1962), a prosecution under *N. Y. Penal Code,* McKinney's Consol. Laws, c.

40, §§ 974–975 which makes knowing possession of numbers slips a crime. Prior to amendments made in 1960, the statutes were construed as making no distinction between a player and a lottery operator. *People v. Marra,* 262 *App. Div.* 1039, 30 *N. Y. S. 2d* 403 (1941); *People v. Caccavone,* 116 *N. Y. S. 2d* 786 (*Westchester Co. Ct.* 1952). The 1960 amendment provides an exception for a bettor possessing records of not more than ten of his own bets. *New York Laws* 1960, *Ch.* 549. Although Tinker had records of five numbers bets in his possession, he was found not guilty of violating the statute since the People had failed to prove beyond a reasonable doubt that they were not records of his own bets. The trial court stated, however, that the preponderance of the evidence indicated that the defendant was taking bets and was not merely a numbers player. Significant is the defendant's comment to the police upon his arrest, "You haven't got me right. You didn't get me with ten numbers." Our statute exhibits no such solicitude toward gamblers; we decline to depart from the plain language of *N. J. S.* 2A:121–3(b) to create a loophole through which those engaged in the numbers traffic can escape. Accordingly, we conclude that the trial court did not err in its charge in *Purdy,* and that in *Melamed* the trial court properly declined to charge the instruction requested by the defendant.

■ The defendants' arguments that their sentences were excessive are without merit. *State v. Tyson,* 43 *N. J.* 411, 417 (1964), certification denied, 380 *U. S.* 987, 14 *L. Ed. 2d* 279 (1965); *State v. Ivan,* 33 *N. J.* 197 (1960).

The judgment of the Appellate Division in *State v. Purdy* is affirmed. The judgment of the Appellate Division in *State v. Melamed* is reversed and the County Court's judgment of conviction is reinstated.

No. A—79: *For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal* — None.

No. A—80 : *For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance* — None.